UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WHISTLEBLOWER
CENTER, *et al.*,

      Plaintiffs,

      v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

      Defendants.

Civil Action No.  10-2120 (JEB)

## MEMORANDUM OPINION

      This case arose from several requests for records submitted pursuant to the Freedom of

Information Act by Plaintiff National Whistleblower Center (NWC), a non-profit organization,

and the individual named Plaintiffs, who are current or former employees of Defendant U.S.

Department of Health and Human Services.  While the suit presents numerous questions, only

one discrete issue remains disputed in Defendants' Motion to Dismiss in Part and for Partial

Summary Judgment.

      FOIA requires agencies to promulgate regulations providing for the expedited processing

of FOIA requests in certain circumstances.  Although HHS issued a proposed rule in 1999, it has

yet to finalize expedited-processing regulations for all of its components except the Food and

Drug Administration.  In the absence of a final rule, the non-FDA HHS components handle

requests for expedited processing pursuant to the general criteria established by FOIA, which are

essentially identical to those set forth in HHS's 1999 proposed rule.  Plaintiffs, whose requests

for expedited processing were denied, seek in Count 26 of their Complaint to compel the agency

to comply with FOIA by promulgating a final regulation.

Defendants have now moved to dismiss or for partial summary judgment on this count, as well as for summary judgment on the adequacy of two HHS components' searches for responsive records, which appear to be challenged in Counts 5, 11, 18, and 22.  Because Plaintiffs suffered no concrete injury from HHS's failure to finalize an expedited-processing regulation, the Court finds that they lack standing to pursue this cause of action.  It will, accordingly, dismiss Count 26 for lack of jurisdiction.  Because Plaintiffs do not oppose Defendants' Motion with respect to the adequacy-of-the-search issue, the Court will grant summary judgment for Defendants with respect to those claims predicated thereon.

## I.      Background

This case concerns a series of FOIA requests submitted by Plaintiffs to HHS for records pertaining to the individual Plaintiffs' employment.  Although the Complaint contains numerous counts, only one – Count 26 – remains at issue in the instant Motion.  Count 26 concerns neither the substance of Plaintiffs' requests nor the sufficiency of HHS's searches and disclosures in response, but rather HHS's failure to promulgate regulations providing for expedited processing of certain FOIA requests.  See Second Am. Compl., ¶¶ 203-07.

FOIA states that "[e]ach agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need; and . . . in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i).  The statute further defines "compelling need" to mean either "that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or, where the requester is "primarily engaged in disseminating information," that

there is an "urgency to inform the public concerning actual or alleged Federal Government activity."  Id. § 552(a)(6)(E)(v).

Consistent with this statutory directive, one component of HHS (the FDA) has enacted an expedited-processing regulation, which Plaintiffs do not challenge.  See Second Am. Compl., ¶¶ 204, 208 & n.4.  HHS has initiated a rulemaking and sought public comment on a proposed expedited-processing regulation for its other components.  See 64 Fed. Reg. 14668 (1999).  The proposed rule states:

> Expedited processing is provided in cases where the requester demonstrates that failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual, or, when the requester is a person primarily engaged in disseminating information, a showing is made that there exists an urgency to inform the public concerning an actual or alleged Federal Government activity. Other requests for expedited processing will be considered on a case by case basis.  The decision to grant expedited processing rests with the FOI Officer, but may be appealed.

Id.  No final rule, however, has yet issued.  See Second Am. Compl., ¶ 204; Mot., Exh. A (Decl. of Robert Eckert), ¶ 11.

According to the agency, its failure to promulgate final regulations governing requests for expedited processing has been the result of limited staff resources.  See Eckert Decl., ¶ 11.  HHS acknowledges that the statute requires it to promulgate a final regulation and avers that it intends to do so in the future when resources permit.  See id.  In the meantime, the agency relies upon the statutory criteria for "compelling need."  Id., ¶ 12.  HHS's FOIA web page provides requesters with a form that allows them to indicate when making a FOIA request whether one of the two statutory criteria for compelling need applies and provide a more detailed justification for expedition.  See id., ¶ 13.

Plaintiffs requested expedited processing for each of their FOIA requests corresponding to Counts 1 through 20 of their Second Amended Complaint.  See Second Am. Compl., ¶ 207. HHS denied Plaintiffs' requests for expedition.  See id.  In Count 26, Plaintiffs maintain that HHS's failure to promulgate expedited-processing regulations has left requesters in the dark about "what criteria are being used to evaluate their requests for expedited processing" and "constitutes a cognizable past and future harm to Plaintiff NWC, due to its status as a frequent FOIA requester."  Id.  Citing FOIA and the mandamus statute, they thus requested that the Court order HHS to promulgate a final expedited-processing regulation and to expedite their FOIA requests.  See id., ¶ 208.

Defendants have now moved to dismiss Count 26 under Rules 12(b)(1) and 12(b)(6) and, alternatively, for partial summary judgment.[1]  They also seek summary judgment on all claims that challenge the adequacy of the searches for responsive records conducted by two HHS components – the Intermediate Office of the Secretary (IOS) and the Assistant Secretary for Preparedness and Response (ASPR).  Plaintiffs' have, "[i]n the interest of judicial economy," conceded the adequacy-of-search issue and limited their Opposition to the expedited-processing regulation issue in Count 26.  See Opp. at 1.  With respect to this Count, Defendants contend that Plaintiffs lack standing, that the Court lacks jurisdiction under FOIA to order HHS to promulgate expedited-processing regulations, and, even if Plaintiffs have standing and the statute confers

---

[1] Although Defendants' Motion is titled "Motion to Dismiss in Part and for Partial Summary Judgment" and purports to seek dismissal and, alternatively, partial summary judgment on Count 26, see Mot. at 1, their Memorandum in Support of that Motion describes itself merely as a "Motion for Partial Summary Judgment."  See Memo. at 1.  While the Memorandum's Standard of Review section sets out the standards for both motions to dismiss and motions for summary judgment, Defendants conclude by asking that the court grant their Motion for Partial Summary Judgment.  See id. at 22.  In their Reply, however, Defendants again refer to their Motion as comprising both a request for dismissal and for summary judgment.  Like Plaintiffs, who filed an "Opposition to Defendants' Motion to Dismiss in Part and for Partial Summary Judgment," the Court construes Defendants' Motion as seeking both dismissal and summary judgment.

jurisdiction, that this case does not present the kind of extraordinary circumstances that would justify the Court in ordering the Agency to promulgate a final rule.

## II.     Legal Standard

While Defendants' Motion invokes the legal standards for dismissal under Rules 12(b)(1) and 12(b)(6) and for summary judgment under Rule 56, the standard relevant to the means by which the Court will resolve this case is that dictated by Rule 12(b)(1).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiffs bear the burden of proving that the Court has subject matter jurisdiction to hear their claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  Id. at 13-14 (quoting 5A Charles A. Wright &

Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1350 (2d ed. 1987) (alteration in original)).

Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider

materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of

jurisdiction." <u>Jerome Stevens</u>, 402 F.3d at 1253; <u>see also</u> <u>Venetian Casino Resort, L.L.C. v.</u>

<u>E.E.O.C.</u>, 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case — a

dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside

the pleadings"); <u>Herbert v. Nat'l Academy of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.     Analysis**

HHS does not dispute that FOIA requires each agency to "promulgate regulations . . .

providing for expedited processing of requests for records." 5 U.S.C. § 552(a)(6)(E)(i).  It

admits, moreover, that, with respect to its non-FDA components, it has not yet done so.  <u>See</u>

Eckert Decl., ¶ 11. The agency maintains, nevertheless, that the Court lacks jurisdiction in this

case to order it to issue a final rule.  The jurisdictional argument is twofold: first, HHS contends

that Plaintiffs lack constitutional standing because they have not suffered a cognizable injury, <u>see</u>

Memo. at 5-9; second, it asserts that the Court lacks jurisdiction under FOIA – the only basis for

Plaintiffs' claim in light of their election to dismiss the mandamus portion of Count 26, <u>see</u> Opp.

at 3-5 – to grant the remedy Plaintiffs seek.  <u>See</u> Reply at 1-4.  "Because standing is a 'threshold

jurisdictional question,'" <u>Holistic Candlers and Consumers Ass'n v. FDA</u>, 664 F.3d 940, 943

(D.C. Cir. 2012) (quoting <u>Byrd v. EPA</u>, 174 F.3d 239, 243 (D.C. Cir. 1999), the Court will

address that issue first.  Because it ultimately concludes that Plaintiffs lack standing, it need

reach neither Defendants' remaining jurisdictional argument nor their argument on the merits.

Article III of the Constitution limits the power of the federal judiciary to the resolution of

"Cases" and "Controversies."  U.S. Const. art. III, § 2; <u>see also</u> <u>Allen v. Wright</u>, 468 U.S. 737,

750 (1984) (discussing the case-or-controversy requirement).  "This limitation is no mere

formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on

which the Federal Government is founded.'"  Dominguez v. UAL Corp., 666 F.3d 1359, 1361

(D.C. Cir. 2012) (quoting Allen, 468 U.S. at 750).  Because "standing is an essential and

unchanging part of the case-or-controversy requirement of Article III," Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560 (1992), finding that a plaintiff has standing is a necessary "predicate

to any exercise of [the Court's] jurisdiction."  Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663

(D.C. Cir. 1996)).

        "Every plaintiff in federal court," accordingly, "bears the burden of establishing the

three elements that make up the 'irreducible constitutional minimum' of Article III standing:

injury-in-fact, causation, and redressability." Dominguez, 666 F.3d at 1362 (quoting Lujan, 504

U.S. at 560-61).  It is the first of these three criteria that Defendants challenge here.  To establish

that they have suffered an "injury in fact," Plaintiffs must point to "an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotations omitted).

In addition, because Plaintiffs seek injunctive relief – namely, an order requiring HHS to

promulgate expedited-processing regulations – past harm is not sufficient to establish an injury

in fact.  See Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros., 317 F.3d 334,

336 (D.C. Cir. 2003).  Plaintiffs must demonstrate "some present or imminent injury" to

establish their standing to seek injunctive relief.  Id.  The likelihood of future injury, moreover,

cannot be merely speculative or hypothetical.  See Nat'l Res. Def. Council v. Pena, 147 F.3d

1012, 1022 (D.C. Cir. 1998).

While Plaintiffs bear the burden to establish standing at all stages of the proceedings, the standard by which the Court determines whether they have met that burden varies depending on whether the issue is presented at the motion-to-dismiss stage or the motion-for-summary-judgment stage.  See Lujan, 504 U.S. at 561.  "[I]n the context of a motion for summary judgment on the issue of standing, [a] [p]laintiff faces a higher burden in meeting the elements of standing than when faced with a motion to dismiss."  Holt v. Am. City Diner, Inc., 2007 WL 1438489, at *5 (D.D.C. 2007) (citing Lujan, 504 U.S. at 561); see also Ringling Bros., 317 F.3d at 338 ("lesser standard required to show standing on a motion to dismiss").  "In analyzing whether [a plaintiff] has standing at the dismissal stage, we must assume that [the plaintiff] states a valid legal claim and 'must accept the factual allegations in the complaint as true.'"  Info. Handling Servs., Inc. v. Def. Automated Printing Servs., 338 F.3d 1024, 1029 (D.C. Cir. 2003) (internal citation omitted).

Unfortunately, it is not entirely clear in the context of Defendants' Motion to Dismiss in part and for Partial Summary Judgment, which initially concerned multiple claims and presents several arguments, whether, with respect to the standing issue, Defendants seek dismissal or summary judgment.  As best the Court can tell, however, Defendants present their standing argument in the form of a Rule 12(b)(1) Motion to Dismiss.  See Mot. at 1.  This is both the best interpretation of Defendants' pleadings and the logical means for Defendants to have chosen to raise the standing argument.  In any event, it is not outcome determinative: if Plaintiffs cannot clear the lower bar posed by a motion to dismiss, they certainly would not clear the summary-judgment hurdle, and the Court may consider materials beyond the Complaint on either motion.  See Jerome Stevens, 402 F.3d at 1253 (court may consider material outside the pleadings on

12(b)(1) motion); Fed. R. Civ. P. 56 (court evaluates parties' factual positions by considering any materials in the record).

Defendants argue that Plaintiffs did not suffer – and are not likely to suffer in the future – a concrete injury from HHS's failure to issue a final expedited-processing regulation.  Because HHS's current practice tracks the statutory standard, its proposed rule, and its intended final rule, see Eckert Decl., ¶¶ 11-12, HHS maintains that Plaintiffs were not, are not, and will not in the future be harmed by its failure to finalize a regulation.  Plaintiffs, on the other hand, contend in their Complaint that "[t]he denial . . . of [their] requests for expedited processing using unknown criteria constitutes a cognizable past and future harm to Plaintiff NWC, due to its status as a frequent FOIA requester."  Second Am. Compl., ¶ 207.  In their Opposition to Defendants' Motion, they simply suggest that standing is "easily satisfied" by the D.C. Circuit's decision in Payne Enterprises v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988), and another court in this district's interpretation of that opinion in a subsequent case, Muttitt v. U.S. Central Command, --- F. Supp. 2d ---, 2011 WL 4478320 (D.D.C. 2011).  See Opp. at 2-3, 5.  As neither of these cases explicitly addresses standing (let alone the injury-in-fact element), the Court is not so "easily satisfied."

In Payne, Air Force Logistics Command (AFLC) bases withheld contract bid abstracts the plaintiff had requested pursuant to an internal policy letter directing them to do so.  See 837 F.2d at 488-89.  The plaintiff appealed these withholdings to the Secretary of the Air Force, who determined that the claimed FOIA exemptions were inapplicable and released the abstracts that had been withheld.  Id. at 489.  Some AFLC officers nevertheless continued to refuse to release bid abstracts to Payne, who was accordingly forced to make repeated appeals to the Secretary, which process was "costly . . . and detrimental to [the plaintiff's] business."  Id. at 490.  The

plaintiff ultimately initiated a suit in federal court seeking declaratory and injunctive relief, which the district court declined to grant because the agency had turned over the specific records the plaintiff had requested.  See id.

On appeal, the D.C. Circuit acknowledged that, "'however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform' with respect to the particular records that were requested."  Id. at 490-91.  "A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III . . . ."  Id. at 491.  It held, nevertheless, that "even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future."  Id. (emphases in original).  Where an agency is "following an 'impermissible practice' in evaluating FOIA requests" and a plaintiff "will suffer 'continuing injury due to [that] practice,'" the court stated, a plaintiff's challenge is not moot.  Id.  In addition, the Court held that "FOIA imposes no limits on courts' equitable powers in enforcing its terms," id. at 494, suggesting that the district court had the authority to enjoin the agency to cease its unlawful practice.  See id. at 495.

Crucially, however, it was beyond dispute in Payne that the plaintiff had suffered a concrete injury, and the court's conclusion that his claim was not moot was premised on his demonstrating a likelihood of continuing injury in the future.  That the plaintiff had suffered an injury was similarly undisputed in Muttitt, the other case Plaintiffs claim demonstrates that they have standing in this suit.  In that case, after two agencies did not provide the plaintiff with a timeframe for processing his FOIA requests, he filed suit requesting the court to compel the

agency both to release the documents he had requested and to comply with a provision of FOIA

requiring that agencies provide estimated dates by which they will complete the processing of

requests.  See Muttitt, 2011 WL 4478320, at *1-2.  In the context of deciding that the plaintiff

could not bring his suit under the APA because FOIA provided him with a basis for relief, the

district court found that where a "plaintiff has stated a claim for relief based on an impermissible

agency pattern or practice of violating FOIA," the statute "could provide the plaintiff with an

equitable remedy, as described in Payne."  Id. at *6.

     Payne and Muttitt, therefore, certainly provide support for Plaintiffs' argument that their

claim was not mooted by HHS's having already provided them with records they had requested.

These cases are also relevant to Plaintiffs' contention that FOIA provides courts with the

authority to provide injunctive relief in circumstances similar to those presented here.  They do

not, however, assist Plaintiffs in demonstrating that they have suffered or are likely in the future

to suffer concrete injury.  Because it was clear that the plaintiffs in these suits had suffered an

injury, standing was simply not addressed in the courts' decisions.

     Plaintiffs, accordingly, have identified no real support for their allegation that they have

suffered and will likely in the future suffer a cognizable injury.  The agency considered and

rejected Plaintiffs' request for expedited processing using the "compelling need" standard

outlined in the general FOIA statute.  See Eckert Decl., ¶ 14; 5 U.S.C. § 552.  If the standard

HHS currently employs in evaluating requests for expedited processing is the same as that

outlined in the statute and the same as that which a final regulation would likely entrench – given

the language of the proposed rule and the agency's representations here – what injury accrued to

Plaintiffs from HHS's failure to finalize its expedited-processing rule?  HHS considered

Plaintiffs' requests for expedited processing and referenced FOIA's "compelling need" standard

in detail when it denied those requests.  <u>See</u> Exh. 2 to Eckert Decl. (Letter from Robert Eckert, Aug. 2, 2010) at 1.  To the extent NWC intends to submit future requests prior to the agency's issuance of a final regulation, the same statutorily mandated standard will apply.  <u>See</u> Eckert Decl., ¶ 12.  Any possibility that the agency's final rule might, contrary to its statements here, identify additional circumstances in which it would grant requests for expedition, furthermore, is "speculative at best."  <u>Transmission Agency of N. Cal. V. FERC</u>, 495 F.3d 663, 670 (D.C. Cir. 2007); <u>Dominguez</u>, 666 F.3d at 1361 (plaintiff lacks standing because injury "too speculative").

Significantly, moreover, it is not as if Plaintiffs were injured by uncertainty regarding the criteria HHS would deploy in evaluating their requests for expedition, as might be the case if they had not been apprised of the standard the agency would use and therefore not had the opportunity to justify their request in terms of that standard.  It is clear on the face of Plaintiffs' first FOIA request that they were aware of HHS's use of FOIA's "compelling need" standard because the request made specific reference to the "compelling need" terminology.  <u>See</u> Exh. 1 to Eckert Decl. (Plaintiffs' FOIA Requests) at 1, 11.  The "compelling need" standard, moreover, is clearly set forth in FOIA itself and also on the agency's FOIA web page.  <u>See</u> Eckert Decl., ¶ 13 (citing http://www.hhs.gov.foia/request/index.html).  Ultimately, therefore, the Court finds that Plaintiffs do not have standing to attempt to enforce 5 U.S.C. § 552(a)(6)(E)(i) against HHS.

In reaching this decision, the Court is not untroubled by the possibility that <u>no one</u> will have standing to challenge HHS's failure to promulgate expedited-processing regulations, in effect rendering 5 U.S.C. § 552(a)(6)(E)(i)'s requirement that agencies issue such regulations "optional and judicially unenforceable."  <u>Muttitt</u>, 2011 WL 4478320, at *5.  This possibility, however, may not be as significant as it appears at first blush.  First, should HHS in the future fail to follow the statutorily mandated criteria for expedited processing or fail to provide

requesters with notice of those criteria, a requester may well suffer a judicially cognizable injury sufficient to confer standing.  Second, requesters might well have standing to enforce § 552(a)(6)(E)(i) against other agencies whose practices diverge from the statutory criteria so as to cause injury to requesters.  Finally, § 552(a)(6)(E)(i) appears unusual insomuch as it requires agencies to promulgate a regulation while simultaneously dictating, with notable specificity, what the contents of such a regulation must be.  Though the statute allows an agency to identify other situations in which it will expedite requests, see 5 U.S.C. § 552(a)(6)(E)(i)(II), it requires that the regulations provide for expedition where an individual demonstrates a "compelling need,"  id. § 552(a)(6)(E)(i)(I), and defines "compelling need" with particularity.  See id. § 552(a)(6)(E)(v).  Where a statute is not so specific concerning the contents of a regulation an agency is required to promulgate, a plaintiff may have less trouble demonstrating that he has been injured by an agency's failure to do so.

In any event, the Court cannot circumvent the "bedrock constitutional principle" that its jurisdiction extends only to those cases in which the plaintiffs have suffered or will imminently suffer an injury in fact.  Dominguez, 666 F.3d 1362.   Because Plaintiffs do not have standing to bring Count 26, the Court cannot reach the merits of their claim.

## IV.  Conclusion

For the foregoing reasons, the Court will issue an Order this day granting Defendants' Motion to Dismiss in Part and for Partial Summary Judgment with respect to Count 26 and dismiss that Count with prejudice.  Additionally, in light of Plaintiffs' "elect[ion] not to challenge the adequacy of the IOS'[s] or ASPR's searches," Opp. at 1, the Court will grant summary judgment for Defendants on any claims relating to that issue.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  March 12, 2012