## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WHISTLEBLOWER CENTER, et al., | |
| Plaintiffs, | |
| v. | Civil Action No.  10-2120 (JEB) |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs, who are the National Whistleblower Center and six current and former employees of Defendant Department of Health and Human Services, have brought this action to gain access to records related to the individuals' employment with that Agency.  Plaintiffs' Second Amended Complaint challenges the decisions of various HHS components and other agencies to withhold documents, and it asserts claims under a variety of statutes including, but not limited to, the Freedom of Information Act, the Privacy Act, and the Administrative Procedure Act.

The records at issue in the parties' current Cross-Motions for Partial Summary Judgment are contained in two investigative case files maintained by HHS's Office of the Inspector General.  While OIG has already released hundreds of pages from these files to Plaintiffs, it has withheld, in whole or in part, hundreds more, citing exemptions to disclosure under FOIA and the Privacy Act.  Through this Motion, Plaintiffs are now challenging a subset of OIG's withholding decisions, as well as the procedure HHS followed when processing their related

administrative appeals.  Defendants oppose Plaintiffs' Motion, arguing their withholdings and processing procedures are correct.

Having considered OIG's sworn representations regarding the content of these withheld records and the necessity of withholding them, and having reviewed *in camera* many of the actual pages at issue, the Court now upholds the majority of OIG's withholding decisions, but not all.  In addition, because the Court finds that Plaintiffs lack standing to bring their procedural claims alleging OIG's failure to adjudicate their appeals, summary judgment will be granted to Defendants on that claim.

## I.      Background

Plaintiffs Ewa Czerska, Paul Hardy, Julian Nicholas, Robert Smith, R. Lakshmi Vishnuvajjala, and Nancy Wersto claim that they are witnesses, complainants, or targets of two HHS OIG investigations related to whistleblowing activities.  Plfs. Mot. (ECF No. 14), Exh. A (Declaration of Kelly McClanahan), ¶ 5.  They contend that these whistleblowing activities relate to HHS's improper approval of medical devices.  Plfs. Mot. at 2.  Between July 26 and November 4, 2010, all individual Plaintiffs, in concert with the National Whistleblower Center, submitted requests under FOIA, 5 U.S.C. §552, *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, *et seq.*, for various records pertaining to their employment with HHS.  Sec. Am. Compl., ¶¶ 17, 51, 64, 102, 155, 168.  Different agency components treated the requests differently.  As to OIG, after initially denying their requests under Exemption 7(A), on the ground that the files related to an ongoing investigation, it processed Plaintiffs' requests and released to them over 800 pages of relevant, non-exempt documents, some with redactions.  See Def. Opp./Mot., Attach. 1 (Declaration of Robin Brooks), ¶¶ 11-12, 18-19, 24-25, 30-31, 36-37, 43-44.

Plaintiffs filed this action on December 15, 2010, and have twice since amended their Complaint.  The parties' instant Cross-Motions for Partial Summary Judgment are limited to Counts 1, 6, 7, 12, 19, 20, and 28, which relate only to Plaintiffs' requests for documents maintained by HHS's OIG and not any other component.[1]  The documents at issue in these counts are contained in two OIG Investigative Case Files: H-08-20505-3 and H-10-00248-3.  File H-08-20505-3 (H-08) contains documents relating to OIG's "investigation into managerial misconduct [at FDA] based on Plaintiffs' allegations."  Plfs. Opp. (ECF No. 68) at 3.  File H-10-00248-3 (H-10) contains documents relating to OIG's investigation into Plaintiffs' "alleged unauthorized disclosure of confidential information."  Id. at 4.  See Defendant HHS's Statement of Material Facts as to Which there Is No Genuine Issue, ¶¶ 4, 6; Plaintiffs' Response to Defendants' Statement of Material Facts, ¶¶ 4, 6.

OIG initially released 481 pages in full and 25 pages with redactions from File H-08.  Brooks Decl., ¶ 49.  Another 366 pages were released in full and 5 pages were released with redactions from File H-10.  Id., ¶ 73.  HHS withheld in full 839 pages and 52 pages, respectively, from those two files under FOIA Exemptions 4, 5, 6, 7(C), and 7(E).  Id., Exhs. 15-16 (Vaughn Indices 1-2).  Finally, OIG referred 182 pages to the Food and Drug Administration (the original creator of the documents) for consultation.  See Defs. Supp. Mot. (ECF No. 59) at 3; Plfs. Opp. at 2-3.

Plaintiffs initially filed the Motion for Partial Summary Judgment now at issue on April 27, 2011, in conjunction with a Motion for Preliminary Injunction.  Defendants opposed Plaintiffs' Motions and cross-moved for summary judgment on May 18, 2011.  On June 3, the

---

[1] Plaintiffs have voluntarily dismissed Count 27, a FOIA/Privacy Act claim against OIG for "failure to perform searches."  See  Sec. Am. Compl., ¶¶ 209-216; Plfs. Opp. at 6.  Following OIG's performance in June-August 2011 of an additional search for records responsive to their requests, "Plaintiffs stipulate that Defendants' search for OIG records was adequate and offer no challenge on that issue."  Plfs. Opp. at 6.  Count 27 is thus dismissed.

Court stayed briefing on Defendants' Cross-Motion pending a ruling on Plaintiffs' Motion for Preliminary Injunction. Plaintiffs' filed their Reply on June 10. Following a hearing on June 20, the Court, two days later, denied Plaintiffs' request for injunctive relief and lifted the stay on Defendants' Cross-Motion. <u>See</u> Order Denying Plaintiffs' Motion for Preliminary Injunction (ECF No. 28).

Since initially filing their Cross-Motions, the parties have worked cooperatively to narrow the areas of their disagreement. On June 23, 2011, OIG completed its consultation regarding the 182 pages at issue that had originated with FDA and released to Plaintiffs an additional 51 complete pages and 73 pages with redactions, while withholding 58 pages. <u>See</u> Defs. Supp. Mot. at 3. At this time OIG also released an additional 35 pages to Plaintiffs, including all withholdings from File H-10 previously made under Exemption 7(E). <u>See</u> Joint Notice Regarding Modification of Exemption 7(E) Withholdings (ECF No. 29) at 1.

Some time in June 2011, OIG began an additional search to confirm that all records responsive to Plaintiffs' requests were in fact contained in Investigative Files H-08 and H-10. <u>See</u> Defs. Supp. Mot. at 2. During this search, additional responsive documents were located in boxes in the case agent's office. <u>Id.</u> at 3. OIG's FOIA Officer, Robin Brooks, determined that 923 pages were responsive to Plaintiffs' requests. <u>Id.</u> On August 30 and September 2, 2011, OIG released to Plaintiff an additional 312 pages in their entirety, released 289 pages with redactions, and withheld in their entirety 322 pages located during this additional search. <u>Id.</u>

On September 26, Defendants filed a Supplement to their Cross-Motion for Summary Judgment in order to address the withholding of the documents discovered during OIG's additional search and those initially referred to FDA for consultation, as well as to address Counts 27 and 28. (ECF No. 59). Plaintiffs filed their Opposition to Defendants' Motion and

Supplement on October 26, and Defendants filed a Reply on November 16.  The Motions are now ripe.

Throughout their briefing, the parties have – admirably, in the Court's opinion – continued to work together to narrow their disputes.  Plaintiffs have agreed, for the purpose of these Motions, to limit the list of OIG withholdings that they seek to contest.  The withholdings Plaintiffs presently oppose are:

- From Investigative File H-08-20505-3:

    - Withheld in part: Pages 1, 9, 25, 48, 49, 52, 53, 135, and 207-212*.[2]
    - Withheld in full: Pages 6, 11-13, 15-16, 18-19, 21, 24, 28-47, 50-51, 54-57, 60, 62-63, 68-93, 94-101, and  217-234*.

- From Investigative File H-10-00248-3:

    - Withheld in part: Pages 3-5*, 6-10*, 14-40*, 551*, and 553.
    - Withheld in full: Pages 42-54*, 126-27, 447, 450-51, 498-503, 543-44, 554-55, and 558-59.

- Additional Search (AS) Records[3]:

    - Withheld in part: Pages 77-81, 83-87, 93-98, 106-114, 115, 197-98, 199, 289-96, 378, 381-82, 392-94, 705, 770, 774-78, 784, 806, and 828-29.
    - Withheld in full: Pages 20-29, 31, 33, 36-48, 66, 74-76, 264, 274, 276, 278-80, 324, 390, and 427-635.

See Plfs. Opp. at 3-4.

Plaintiffs are "also voluntarily removing from controversy any challenge to the withholding of any names, titles, phone numbers, social security numbers, office numbers, and comparable Personally Identifiable Information ('PII') that may be located in the above indicated pages."  Plfs. Opp. at 6.  Plaintiffs note, however, that "this concession is made with the caveat

---

[2] Pages with asterisks denote those that originated with FDA and were initially referred there for consultation prior to OIG making a final FOIA determination.
[3] OIG describes these records as being "part of investigation numbers H-08-20505-3 and H-10-00248-3."  Plfs. Opp. at 3 (emphasis in original); see also Defs. Reply at 5.

that Plaintiffs narrowly define PII as <u>just</u> these types of unique identifiers, as opposed to . . . anything that could be used to identify a person." <u>Id.</u> (emphasis added).  As an example, Plaintiffs challenge the notion that "the fact that [an individual] was in a particular meeting and that Plaintiffs would be able to use that information to deduce the person's identity based on the fact that they knew who was present at that meeting" qualifies as personally identifiable information exempt from disclosure.  <u>Id.</u>

In order to more accurately evaluate OIG's withholding decisions, on March 13 and 20, 2012, the Court ordered OIG to submit for *in camera* review 279 pages that the Agency contends are exempt from disclosure, along with a declaration further explaining the non-public nature of the law-enforcement techniques withheld under Exemption 7(E).  OIG complied with these orders, and the Court has reviewed the documents in question.

While Counts 1, 6, 7, 12, 19, and 20 all relate to Plaintiffs' challenges to specific OIG withholdings, Count 28 – "Failure to Adjudicate Appeals" –  is procedural in nature.  <u>See</u> Sec. Am. Compl., ¶¶ 217-225.  Here Plaintiffs state: "Each time Plaintiffs filed an administrative appeal challenging the blanket exemptions initially invoked by OIG, HHS did not adjudicate the appeal.  Instead, OIG opened a new FOIA/PA request with a new Request Number, and HHS dismissed the pending appeal as moot.  Upon information and belief, this activity represents an ongoing policy or practice." <u>Id.</u>, ¶ 218.  "By failing to adjudicate Plaintiffs' appeals of these blanket withholdings," they allege, "HHS effectively ensured that the blanket withholdings could not be reversed administratively or undergo judicial review." <u>Id.</u>, ¶ 219.  Plaintiffs contend that "[a] policy or practice that intentionally avoids appellate or judicial review of withholding decisions is in violation of FOIA and the Privacy Act," and is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." <u>Id.</u>, ¶ 220.  As relief Plaintiffs seek a declaratory order

6

that "HHS is in violation of its statutory responsibilities under 5 U.S.C. § 552, 552a and an injunction compelling Defendant HHS pursuant to those statutes to cease the practice of opening new FOIA/PA requests instead of properly adjudicating administrative appeals of denials."  Id., ¶ 225.

## II.    Legal Standard

 Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim.  Liberty Lobby, Inc., 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  A defendant agency seeking summary judgment in a FOIA case must demonstrate that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located has been produced to the plaintiff or is exempt from disclosure.

Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).  In a

FOIA case, the Court may grant summary judgment based solely on information provided in an

agency's affidavits or declarations if they are relatively detailed and "describe the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit

Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or declarations are

accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims

about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. Sec. &

Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v.

CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

As narrowed by the parties, there are now three questions to be decided here.  First,

although OIG has released many pages to Plaintiffs, it nonetheless asserts a blanket privilege

under the Privacy Act for those documents it has withheld.  Is this blanket privilege proper?

Second, even if proper under the Privacy Act, are the particular withholdings also appropriate

under FOIA?  Plaintiffs' entitlement to access records under each of these Acts "is available

without regard to exemptions under the other"; therefore, in order to withhold the documents

Plaintiffs seek, OIG "must demonstrate that the documents fall within some exemption under

each Act."  Martin v. Office of Special Counsel, MSPB, 819 F.2d 1181, 1184 (D.C. Cir. 1987)

(emphasis in original).  Third and finally, did OIG correctly handle Plaintiffs' administrative

appeals under FOIA?

A.      Privacy Act

The Privacy Act requires that

> [e]ach agency that maintains a system of records shall . . . upon request by
> any individual to gain access to his record or to any information pertaining
> to him which is contained in the system, permit him . . . to review the
> record and have a copy made of all or any portion thereof in a form
> comprehensible to him . . . .

5 U.S.C. § 552a(d)(1).  The Act, however, also identifies certain general and specific exemptions

from this requirement.  See id., §§ 552a(d)(5), (j)-(k).  In the present case, Defendants invoke §

552a(k)(2).  Under this exemption, OIG may withhold the documents Plaintiffs seek under the

Privacy Act if HHS has properly promulgated a rule that exempts from disclosure the system of

records in which they are maintained.  See 5 U.S.C. § 552a(k).  Whether HHS has done so is

where the first dispute lies.

1.      *Proper Promulgation of Rule*

HHS contends that the records at issue in this case – namely, those contained in Files H-

08 and H-10 – are exempt because they are maintained in OIG's "civil and administrative

investigative files" records system, and HHS has promulgated a rule, 45 C.F.R. §

5b.11(b)(2)(ii)(D), exempting such files from the Privacy Act's access provisions.  See Defs.

Opp./Mot. (ECF No. 18) at 35-36 (citing Brooks Decl., ¶ 7).  In light of this rule, Defendants

argue, OIG need not have processed Plaintiffs' records requests under the Privacy Act.

Plaintiffs argue first, and in vain, that 45 C.F.R. § 5b.11(b)(2)(ii)(D) was improperly

promulgated and, consequently, that OIG's civil and administrative investigative files have not

been successfully exempted from the Privacy Act.  See, e.g., Plfs. Reply (ECF No. 26) at 5-7.

Their argument is based on the last provision of § 552a(k), which states that "[a]t the time rules

are adopted under this subsection, the agency shall include in the statement required under

section 553(c) of this title, the reasons why the system of records is to be exempt from a

provision of this section."  They argue that § 5b.11(b)(2)(ii)(D) fails to comply with this requirement and is thus invalid.

Plaintiffs concede that "HHS included its reasons for exempting the OIG Civil/ Administrative Records System when it published a Final Rule in the *Federal Register*."  Plfs. Reply at 6 (citing 47 Fed. Reg. 57040 (Dec. 22, 1982)).  In fact, the Final Rule advises that OIG's Civil and Administrative Investigative Files were exempted "[i]n order to maintain the integrity of the OIG investigative process and to assure that the OIG will be able to obtain access to complete and accurate information" and explains that this records system

> will contain sensitive investigative records, the release of which could impede on-going investigations, violate the privacy rights of individuals other than the subjects of the investigations, reveal the identifies of confidential sources, or otherwise impair the ability of the Office of Inspector General to conduct civil and administrative investigations.  For these reasons, the Department is exempting this system, under subsection (k)(2) of the Privacy Act, from the notification, access, correction and amendment provisions of the Privacy Act.

47 Fed. Reg. 57040.  Nor do Plaintiffs contest the sufficiency of these reasons.  Rather, they argue that because HHS's statement of reasons appears only in the Federal Register, and not in the Code of Federal Regulations where the rule was eventually codified at 45 C.F.R. § 5b.11(b)(2)(ii)(D), subsection (k) is not satisfied.  Plaintiffs' interpretation of subsection (k) and, more to the point, section 553(c) demands too much.

Subsection (k)(2) requires only that an agency's rule exempting investigative material comply with the Administrative Procedure Act's requirement that "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."  5 U.S.C. § 553(c).  Contrary to Plaintiffs' position, <u>see</u> Plfs. Reply at 6-7 n.3, § 553(c) is satisfied when a statement of the rule's basis and purpose is included in the preamble to the Final Rule appearing in the Federal Register.  That is the case here.

The regulations and case law interpreting § 553(c) indicate that compliance with the "basis and purpose" requirement is an essential part of a rule's preamble. For example, 1 C.F.R. § 18.12 requires that "[e]ach agency submitting a proposed or final rule document for publication shall prepare a preamble which will inform the reader, who is not an expert in the subject area, of the basis and purpose for the rule or proposal." Id. (emphasis added). The D.C. Circuit has made clear that when a rule's preamble contains an adequate statement of the rule's basis and purpose, the requirement of § 533(c) is satisfied. See In re Surface Mining Regulations Litigation, 627 F.2d 1346, 1354 (D.C. Cir. 1980) ("The preamble to the final interim regulations satisfies the mandate of the Administrative Procedure Act, 5 U.S.C. s 553(c), that rules adopted incorporate 'a concise general statement of their basis and purpose.'"). Section 4(b) of the APA, codified at § 533(c), the D.C. Circuit has explained,

> provides that the statement of "basis and purpose" shall be incorporated "in the rules." Since the rules must be published . . . a statement of "basis and purpose" can be "incorporated in the rules" only if it too is published. We do not mean to suggest, however, that a [§] 4(b) statement must be published at precisely the same moment as the regulations. The agency must be allowed some latitude for technical difficulties. The enquiry must be whether the rules and statement are published close enough together in time so that there is no doubt that the statement accompanies, rather than rationalizes the rules.

Tabor v. Joint Board for Enrollment of Actuaries, 566 F.2d 705, 711 n.14 (D.C. Cir. 1977).

As the reasons for HHS's rule exempting OIG's civil and administrative investigative files from the Privacy Act's access provisions sufficiently appear in the preamble to the Final Rule in the Federal Register, OIG has complied with § 553(c). These files, including those at issue in this case, therefore, are generally exempt from the Privacy Act.

2. *Denial of Right, Privilege, or Benefit*

Section 552a(k)(2) makes clear, however, that even files contained in an exempt system of records must be disclosed under the Privacy Act "if any individual is denied any right,

privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would

otherwise be eligible, as a result of the maintenance of such material."   Plaintiffs contend that

even if OIG's records-system exemption was properly promulgated, they have a right to access

the documents contained in File H-10 under this exception.   In other words, they claim they

suffered adverse employment actions as a result of the maintenance of such material.   See Notice

of Filing of Additional Exhibits and of Additional Authority (dated June 20, 2011) (ECF No. 27)

(with attachments: "Czerska Notice of Proposed Removal," "Hardy Notice of Non-Duty Status,"

"Vishnuvajjala Memo of Caution").   This argument fares no better.

OIG disputes that any employment actions taken against Plaintiffs occurred as a result of

the maintenance of Investigative File H-10.   The results of that investigation, OIG attests,

produced "no evidence of prohibited personnel practices, retaliation, or other violations of law.

Any administrative action taken by the FDA against the individual plaintiffs was separate from

OIG's two investigations, was at FDA's discretion, and was not as a result of OIG's maintenance

of records in the two investigation files at issue in this case."   Brooks Decl., ¶ 9.  All Plaintiffs

offer in contradiction is an email from the OIG Assistant Special Agent in Charge of the

investigation to the FDA Director of the Center for Devices and Radiological Health (CDRH),

where Plaintiffs worked.  This email states: "Your office indicated it had developed sufficient

evidence to address the alleged misconduct through administrative processes . . . ."  Plfs. Mot. at

15.  Despite Plaintiffs' reliance on it, when it is considered in light of OIG's findings of no

misconduct, this email actually supports OIG.   In other words, OIG is pointing out that FDA will

handle Plaintiffs' misconduct through FDA's administrative processes.   In sum, OIG's

maintenance of its investigative files did not cause Plaintiffs to be denied rights or benefits;

instead, FDA's maintenance of its own investigative files resulted in any adverse employment actions suffered by Plaintiffs.

Plaintiffs nevertheless contend that Plaintiff Czerska was terminated by FDA in part based on "'evidence that OIG obtained during its investigation.'" Plfs. Opp. at 14 (quoting Defs. Opp./Mot. at 32). They contend that § (k)(2) should be read such that if one agency (FDA) took administrative action against an employee based on records or documents collected by another agency (OIG) during its own investigation, the files must be disclosed. Yet, as the email demonstrates, FDA took action based on its collection of evidence, not OIG's. Finally, Plaintiffs argue that FDA's actions and OIG's maintenance of its investigative files are both attributable to their parent agency, HHS. The Court need not decide this issue now because Plaintiff has sought the same documents from FDA itself. The Court will thus address the FDA issue when it is presented. The Court otherwise concludes that Plaintiffs cannot access File H-10 under the cited exception to subsection (k)(2) because OIG's investigation resulted in no denial of benefit to Plaintiffs.

Because the undisputed facts show that OIG is entitled to withhold the documents Plaintiffs seek under the Privacy Act, the Court now moves to consider whether withholding is appropriate under FOIA.

B.     FOIA

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Reporters

Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).  "Unlike the review of other agency

action that must be upheld if supported by substantial evidence and not arbitrary and capricious,

the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district

courts to 'determine the matter de novo.'"  Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C.

§ 552(a)(4)(B)).  "At all times, courts must bear in mind that FOIA mandates a 'strong

presumption in favor of disclosure . . . .'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26,

32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Congress exempted nine categories of documents from FOIA's broad sweep.  "[T]he

statutory exemptions, which are exclusive, are to be 'narrowly construed.'"  Id. (quoting Dep't of

Air Force v. Rose, 425 U.S. 352, 361 (1976)).  This case turns on the application of Exemptions

5, 6, 7(C), and 7(E).[4]

In evaluating the propriety of OIG's withholding decisions, the Court has reviewed and

relies in part on the Declaration and Supplemental Declaration of OIG's FOIA Officer, Robin

Brooks, see Def. Opp./Mot., Attach. 1; Def. Supp. Mot., Exh. 1, as well as the four Vaughn

Indices the government has filed with their briefs.  See Brooks Decl., Exh. 15 (index for File H-

08 initial withholdings, hereinafter Vaughn Index 1); Brooks Decl., Exh. 16 (index for File H-10

initial withholdings, hereinafter Vaughn Index 2); Brooks Supp. Decl., Exh. 4 (index for

documents found during OIG's additional search, hereinafter Vaughn Index 3); Brooks Supp.

Decl., Exh. 5 (index for documents initially referred to FDA for consultation, hereinafter Vaughn

Index 4).  In addition, the Court has conducted its own in camera review of a substantial subset

---

[4] At this time, Plaintiffs do not challenge OIG's withholdings under Exemption 4.  See Defs. Reply (ECF No. 74) at 1 (noting that Plaintiffs' briefs do not address Exemption 4 withholdings).  For this reason, the Court need not now decide whether portions of the following documents were improperly withheld: H-08 pages 207-12, 217-34; H-10 pages 3-5, 14-40; and the Exemption 4 redactions to AS 77-81.

of the withheld documents at issue, which OIG has provided.  These documents consist of: 1) File H-08 pages 9, 54-57, and 62-63; 2) File H-10 pages 126-27, 447, 450-51, 498-503, 543-44, 553, and 554-55; and 3) Additional Search pages AS 20-29, 31, 33, 36-48, 66, 74-76, 264, 274, 276, 278-79, 324, 378, 381-82, 390, 392-94, 427-635, 705, 770, 784, and 806.  Finally, the Court has also reviewed *in camera* a declaration explaining the non-public nature of the law-enforcement techniques withheld under FOIA Exemption 7(E).

1. *Exemptions 6 and 7(C)*

Because the majority of the pages Plaintiffs assert should be released to them were withheld at least in part based on FOIA Exemptions 6 and 7(C), the Court will consider first whether these exemptions were properly applied.  OIG invokes Exemptions 6 and 7(C) for all documents withheld in full and almost all partial redactions from File H-08, all but two pages withheld from File H-10, and the majority of pages withheld from the additional search (AS) documents.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Id. § 552(b)(7)(C).  Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information."  Beck v. U.S. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. See id. Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-enforcement materials than to personnel, medical, and other similar files. See id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491.

As a result, if the records and information OIG seeks to withhold in this case were "compiled for law enforcement purposes," the Court need only address whether the agency has properly withheld these documents under Exemption 7(C). While Defendants maintain Files H-08 and H-10 meet this threshold requirement, Plaintiffs contend they do not. On this point Defendants are correct.

a.   Law-Enforcement Purposes

In Jefferson v. U.S. Dep't of Justice, Office of Professional Responsibility, 284 F.3d 172 (D.C. Cir. 2002), the D.C. Circuit summarized the law governing application of Exemption 7's requirement that the records in question be compiled for law-enforcement purposes. In performing this analysis, "the focus is on how and under what circumstances the requested files

were compiled, . . . and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" Id. at 176-77 (citing Weisberg v. U.S. Dep't of Justice, 489 F.2d 1195, 1202 (D.C. Cir. 1973); quoting Aspin v. U.S. Dep't of Defense, 491 F.2d 24, 27 (D.C. Cir. 1973)).  The court reiterated its identification of two categories of investigative files that government agencies compile: "(1) files in connection with government oversight of the performance of duties by its employees, and (2) files in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions." Jefferson, 284 F.3d at 177 (citing Rural Housing Alliance v. U.S. Dep't of Agriculture, 498 F.2d 73, 81 (D.C. Cir. 1974)).

Exemption 7 does not exempt "[i]nternal agency investigations . . . in which an agency, acting as the employer, simply supervises its own employees." Stern v. F.B.I., 737 F.2d 84, 89 (D.C. Cir. 1984).  On the other hand, "an agency's investigation of its own employees is for 'law enforcement purposes' . . . if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." Id. (quoting Rural Housing Alliance, 498 F.2d at 81); see also Kimberlin v. U.S. Dep't of Justice, 139 F.3d 944, 947 (D.C. Cir. 1998).  Exemption 7 is thus triggered when "'the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" Jefferson, 284 F.3d at 177 (quoting Aspin v. U.S. Dep't of Defense, 491 F.2d 24, 27 (D.C. Cir. 1973)).

The documents contained in both Investigative Files H-10 and H-08 qualify as records compiled for law-enforcement purposes.  File H-10 was compiled to "investigat[e] allegations against plaintiffs, Hardy, Smith, and Czerska, of unauthorized disclosure of information in potential violation of 18 U.S.C. § 1905."  Brooks Decl., ¶ 8.  File H-08 was compiled to:

> investigat[e] specific allegations from certain [FDA] employees, including individual plaintiffs, about certain managers at the FDA Center for

> Devices and Radiological Health (CDRH), regarding allegations that those managers engaged in misconduct relating to the scientific review of applications for pre-market approval or clearance of radiological devices, allegations that those managers violated an FDA regulation, 21 C.F.R § 10.70, concerning the documentation of significant decisions in the administrative file, and allegations that those managers retaliated against the complainants.

Id.  In other words, the records in both investigative files were compiled to investigate allegations that specific individuals at FDA had engaged in specific acts that could constitute violations of criminal and civil laws.  This is not a case involving personnel files maintained in the ordinary course of monitoring employees' performance at an agency.  Instead, these files were compiled to carry out investigations in response to specific allegations with the potential to lead to enforcement actions against the targets.

It is of no moment that both investigations resulted in findings of no misconduct and that no sanctions were ultimately imposed by OIG.  See Center for National Policy Review on Race and Urban Issues v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974) ("For a file to be deemed to have been compiled for law enforcement purposes it is not necessary that an adjudication have been imminent or even likely, either at the time the material was amassed or at the time disclosure is sought under the FOIA.").  Exemption 7 is "applicable to material amassed in connection with an enforcement proceeding that [is] merely 'conceivable.'  Likelihood of adjudication is not the decisive determinant of whether a file has been compiled for law enforcement purposes."  Id.

The facts underlying Investigation H-10 are on all fours with Kimberlin v. U.S. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998), in which the D.C. Circuit found that the records at issue were compiled for law-enforcement purposes.  Id. at 947-48.  That case, as does this one, involved an "investigation . . . conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official."  Id. at 947.  The Kimberlin

18

investigation, as is true for both investigations in the present case, "was not aiming generally. . .

'to insure that [the agency's] employees are acting in accordance with statutory mandate and the

agency's own regulations.'"   Id. at 948-49 (quoting Rural Housing Alliance, 498 F.2d at 81)

(emphasis added).  Defendants have thus satisfied their initial burden under Exemption 7 of

showing that the records Plaintiffs seek were compiled for law-enforcement purposes.

### b.  Privacy Interests in Withholding

Exemption 7(C) allows for the withholding of records compiled for law-enforcement

purposes if disclosure "could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  5 U.S.C. § 552 (b)(7)(C).  "To determine whether disclosure of certain

information would constitute an unwarranted invasion of privacy, the Court must balance the

public interest in disclosure against the privacy interest of the individual mentioned in the

record."  Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 45 (D.D.C. 1999).

The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a

privacy interest in the materials sought.  See ACLU, 655 F.3d at 6.  In this context, the Supreme

Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy

encompass[es] the individual's control of information concerning his or her person."  Reporters

Comm., 489 U.S. at 763.  To constitute a privacy interest under FOIA, the claimed interest must

be "substantial."  Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008).

"[S]ubstantial," however, "means less than it might seem.  A substantial privacy interest is

anything greater than a de minimis privacy interest."  Id.

Individuals involved in law-enforcement investigations – including targets, witnesses,

complainants, and investigators – have a privacy interest in the non-disclosure of their names and

identifying information.  See Computer Professionals for Social Responsibility v. U.S. Secret

19

Service, 72 F.3d 897, 904 (D.C. Cir. 1996) ("'Exemption 7(C) takes particular note of the strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity.'") (quoting Dunkelberger v. U.S. Dep't

of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)).  This protection extends to "'persons who are not

the subjects of the investigation [but who] may nonetheless have their privacy invaded by having

their identities and information about them revealed in connection with the investigation'"

because disclosure of their identities "'may result in embarrassment and harassment.'"  Id.

(quoting Burge v. Eastburn, 934 F.2d 577, 579 (5th Cir. 1991); McDonnell v. United States, 4

F.3d 1227, 1255 (3d Cir. 1993)).  Exemption 7(C) thus "affords broad[] privacy rights to

suspects, witnesses, and investigators."  Bast v. U.S. Dep't of Justice, 665 F.2d 1251, 1254 (D.C.

Cir. 1981); see also SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

OIG invokes Exemption 7(C) as a basis for withholding nearly all of the documents that

remain in dispute for purposes of this Motion.  While Defendant has withheld some of these

documents in full (including H-08 pages 6, 11-13, 15-16, 18-19, 21, 24, 28-47, 50-51, 54-57, 60-

62-63, 68-93, and 94-101; H-10 pages 42-54, 447, 450-51, 498-503, 543-44, and 558-59; and AS

pages 20-29, 31, 33, 36-48, 66, 74-76, 264, 274, 276, 278-80, 324, 390, and 427-635), it has

released others in part through the use of redactions to prevent the disclosure of personally

identifiable information (including H-08 pages 1, 9, 25, 48, 49, 52, 53, and 135; H-10 pages 6-

10, 14-40, 551, and 553; and AS pages 77-81, 83-87, 93-98, 106-114, 115, 197, 199, 289, 378,

381-82, 392-94, and 828-29).

The pages Plaintiffs contend OIG improperly withholds under this exemption fall into

one of three general categories: 1) documents – such as emails or exhibit logs – on which OIG

has excised personally identifiable information through the use of discrete redactions; 2)

documents – such as notes of witness interviews – that OIG has withheld in their entirety on the ground that all of the information contained therein would reveal an individual's identity; and 3) documents in which accusations and derogatory statements made against an individual, as well as that individual's identity, have been redacted.  The Court will consider the privacy interests at stake for each of these categories of documents.

In the first category, many of the withholdings under Exemption 7(C) were made, OIG attests, to protect the identities of the targets of, and the witnesses and law enforcement agents and officials who participated in, the two investigations at issue.  Where this was accomplished merely by redacting a name, title, phone number, office number, or comparable personally identifiable information, Plaintiffs do not object to the withholding.  Plfs. Opp. at 21.  This concession thus ends the Court's analysis of the pages where such limited redactions of personal information were made.  OIG represents, and the Court's review of the size and placement of the redactions on a number of the pages confirms, that redactions on the following pages were thus properly withheld:  H-08 pages 1, 48, 49, 52, 53, and 135; H-10 pages 551 and 552-53; and AS pages 381-82 and 392-94.

Although H-10 pages 447 and 450-51, and AS page 390, were withheld in their entirety, the Court's *in camera* review of these documents confirms that, as described in Section III(B)(3)(b), *infra*, the substance of these emails between OIG and either FDA or the Office of Public Health and Science, or between employees of FDA, may be withheld under Exemption 5, leaving for Exemption 7(C) only the type of personal information Plaintiffs decline to challenge. Similarly, while H-08 page 9 and AS page 392-94 contain substantial redactions under both Exemption 5 and Exemption 7(C), the Court's *in camera* review revealed that all substantive information redacted under both exemptions qualifies for withholding under Exemption 5, thus

limiting the use of Exemption 7(C) in this document to discrete personal information.  No dispute remains, therefore, as to the Exemption 7(C) withholdings in these documents.

The second category of documents at issue here is a source of disagreement for the parties.  These records, which include File H-08 pages 6, 11-13, 15-16, 18-19, 21, 24, 25, 28-47, 50-51, 54-57, 60, 62-63, 68-93, and 94-101; H-10 pages 558-59; and AS pages 20-29, 31, 33, 36-48, 66, 74-76, 264, 274, 276, 278-80, 324, and 427-635, were withheld in their entirety (or in substantial part) under Exemption 7(C).  According to OIG's <u>Vaughn</u> Index and Robin Brooks's Declarations, and confirmed by the Court's *in camera* review of the AS documents included in this category, these pages consist of reports of conversations, reports of interviews, and "handwritten notes of OIG agents taken during witness interviews and handwritten notes of FDA employees provided to OIG during OIG's investigation[s]."  <u>Vaughn</u> Index 3 at 3.  OIG contends these documents must be withheld in full under Exemption 7(C) "where it was not possible to reasonably segregate information, because the witnesses were known to the targets," or where the "third parties interviewed or investigated worked in the same office or agency and would be easily identifiable to the targets of the investigation, as well as [to] the plaintiffs."  Brooks Decl., ¶ 64.  Plaintiffs argue OIG's interpretation of Exemption 7(C) is overbroad in asserting "that entire records may be withheld under these exemptions because one or more Plaintiffs, possessing the specialized knowledge gleaned from having taken part in the investigations, may be able to identify these individuals based on their testimony where a member of the public would not."  Plfs. Opp. at 21.

Exemption 7(C) protects a qualifying individual's privacy by exempting records and information that would reveal his or her identity from disclosure.  Nothing in the language of the exemption limits such withholdings to names, social security numbers, phone numbers, and other

discrete personally identifiable information that Plaintiffs decline to challenge.  The decisions of

other courts that have considered this issue support OIG's contention that "[w]hen the

information in question concerns a small group of individuals who are known to each other and

easily identifiable from the details contained in the information, redaction does not adequately

protect privacy interests."  Defs. Reply (ECF No. 74) at 12.  For instance, Department of Air

Force v. Rose, 425 U.S. 352 (1976), involved a FOIA request for case summaries of honor and

ethics hearings at a service academy with personal references and other identifying material

deleted.  The Supreme Court observed in that case, however, that "what constitutes identifying

information regarding a subject cadet must be weighed not only from the viewpoint of the public,

but also from the vantage of those who would have been familiar, as fellow cadets or Academy

staff, with other aspects of his career at the Academy."  Id. at 380.  In other words, while the

redaction of an individual's name may be sufficient to protect his identity and privacy from the

public, it may not be sufficient so protect him in the smaller community of his school or work.

The Rose Court thus upheld the court of appeals instruction to the district court that, "if

in its opinion deletion of personal references and other identifying information 'is not sufficient

to safeguard privacy, then the summaries should not be disclosed.'"  425 U.S. at 381 (citation

omitted).  The Tenth Circuit also applied this principle in Alirez v. NLRB, 676 F.2d 423 (10th

Cir. 1982).  In that case, the "requested documents relate[d] to a few incidents involving about a

dozen people.  Even sanitized, these documents would enable Mr. Alirez, and others who had

specific knowledge of these incidents, to identify readily the informant and persons discussed in

each document."  Id. at 427-28.  For this reason, the court concluded that the "deletion of names

and other identifying data ordered by the district court [was] inadequate to prevent serious

privacy invasions."  Id. at 427.  These cases support OIG's position that an entire document such

as a report or notes from a witness interview may be withheld in its entirety where disclosure

would allow other agency employees to identify the witness and thus constitute an unwarranted

invasion of privacy.

The Court here accepts OIG's determination that the contents of the reports and notes

listed above, unless withheld in their entirety, would reveal the identity of a target or witness in

OIG's investigations.  While the Court has reviewed some but not all of these documents,

lacking the knowledge of an FDA insider, the Court is not in a position to make line-by-line

determinations of which statements from a witness interview would expose the witness's

identity.  As the Ninth and Tenth Circuits have observed:

> "The problems in undertaking to decide which portions of an employee's
> statement may be released to his employer without revealing that
> employee's identity are enormous, if, indeed, not insoluble. Merely
> deleting the name from the statement would not insure against
> identification, since the employee's narrative, or part of it, may be such
> that the employer could identify the employee involved, or could narrow
> the group down to two or three employees. Moreover, it is doubtful
> whether the court could select which portions to release with the degree of
> certainty required adequately to protect the interests of employees who
> wish to avoid identification."

Alirez, 676 F.2d at 428 (quoting Harvey's Wagon Wheel, Inc. v. NLRB, 91 L.R.R.M. 2410,

2415 (N.D. Cal. 1976), remanded in part on other grounds, 550 F.2d 1139 (9th Cir. 1976)).

This deference to the government's evaluation is warranted because this is not a case in

which OIG has categorically withheld in full all documents for which it claims Exemption 7(C).

On the contrary, the record in this case contains numerous examples of places where OIG has

made use of targeted redactions to release documents to Plaintiffs without disclosing personally

identifiable information.  OIG has attested that "all reasonably segregable, non-exempt

information has been released," and that where "records [were] withheld in their entirety, there

was no reasonably segregable material or non-exempt information amounted to essentially

meaningless words and phrases."  Brooks Decl., ¶ 88; Brooks Supp. Decl., ¶ 19. The Court has

no reason to doubt the veracity of these declarations.  The fact that OIG has redacted and

released many of the documents for which it claims Exemption 7(C) applies supports its

declaration that it has only withheld the information necessary to protect the identities of  the

investigation's targets, witness, and investigators.  The Court's partial *in camera* review, which

revealed general diligence and fairness on the part of OIG in selecting which information to

disclose and which information to withhold, provides no cause to question the government's

application of the exemption to these documents.  The Court therefore finds that the witness and

interview notes listed above all contain information to which significant privacy interests attach.

Third and finally, Plaintiffs also contest OIG's decision to withhold under Exemption

7(C) a category of information that the government describes as "accusations or derogatory

statements against specific individuals."  See Defs. Reply at 14 n.11; see also Plfs. Opp. at 23-24.

These records consist of H-10 pages 6-10, 14-40, and 42-54; and AS pages 77-81, 83-87, 93-98,

106-114, 115, 197-98, 199, and 828-29.  Id.  With the exception of one document (H-10 42-54,

for which OIG also asserted Exemptions 4 and 5), all of these documents have been released to

Plaintiffs in part, with limited redactions.  Accusations and derogatory statements made against

specific individuals, if made public, can reasonably be expected to result in an intrusion on those

individuals' personal privacy by causing embarrassment and reputational harm.  See McCutchen

v. Dep't of Health and Human Services, 30 F.3d 183, 187-88 (D.C. Cir. 1994); Carter v. Dep't of

Commerce, 830 F.2d 388 (D.C. Cir. 1987).  The subjects of these statements thus have a privacy

interest in the non-disclosure of accusations and derogatory statements made against them,

particularly when they have been found not to have officially committed any misconduct.

McCutchen, 30 F.3d at 188 (finding HHS scientists accused of misconduct "who have been investigated and exonerated[] have a substantial privacy interest in remaining anonymous").

Having found personal privacy interests in all of OIG's Exemption 7(C) withholdings, the Court must now evaluate the public interest in their disclosure.

### c.   Public Interest in Disclosure

When evaluating the public interest in disclosure of information that implicates the personal privacy of an individual mentioned in a law-enforcement record, it is the "'interest of the general public and not that of the private litigant'" that the Court must consider.  Blanton v. U.S. Dep't Justice, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) (quoting Brown v. FBI, 658 F.2d 71, 75 (2d Cir. 1981)).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  Davis v. 968 F.2d at 1282 (quoting Reporters Comm., 489 U.S. at 773).  The request must thus "have the objective of obtaining a response that 'sheds light on the conduct of [a] Government agency or official.'"  Cuban v. SEC, 744 F. Supp. 2d 60, 87 (D.D.C. 2010) (quoting Reporters Comm., 489 U.S. at 773).

Plaintiffs explain that they are currently involved in a public debate over "whether or not the OIG investigations" – H-08 and H-10 – "were conducted properly."  Plfs. Opp. at 23 (emphasis in original).  "That purpose," they explain, "is the driving force behind Plaintiffs' efforts to obtain the controverted information from these Case Files.  Plaintiffs agree that the OIG reports found no misconduct.  Plaintiffs (and a healthy number of politicians and reporters) do not believe that the evidence inside the Case Files supports such a finding."  Id. (emphasis in original).  In support of this asserted public interest, Plaintiffs have filed with the Court numerous newspaper articles discussing a Congressional inquiry into whether the FDA illegally

surveilled Plaintiffs' personal email accounts and whether Plaintiffs were retaliated against for engaging in protected whistleblower activities.  See ECF Nos. 80 and 88.

The public no doubt has an interest in knowing whether HHS OIG properly investigates allegations of misconduct by agency officials and whether this was done during Investigations H-08 and H-10.  "[M]atters of substantive law enforcement policy are properly the subject of public concern."  ACLU, 655 F.3d at 14 (quoting Reporters Comm., 489 U.S. at 766 n.18).  For this reason, "a request that seeks 'information that would explain how [an agency's] disciplinary procedures actually functioned' is permissible."  Cuban, 744 F. Supp. 2d at 87 (quoting Reporters Comm., 489 U.S. at 773).  As another court in this District described it, "There is a compelling public interest in knowing whether the defendant [agency] conducts investigations free of misconduct by its employees and how alleged transgressions by its employees are addressed."  Cuban, 744 F. Supp. 2d at 84.

In light of Plaintiffs' stated purpose in seeking the information contained in the files for investigations H-08 and H-10, the Court finds that the public does have an interest in their disclosure.  The Court must now balance this public interest with the privacy interests implicated by disclosure.

### d.  Balancing

The Supreme Court has explained the test to be applied when balancing private interests in non-disclosure with the public interest in obtaining the information withheld:

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted.

National Archives and Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

As described above, the disputed documents withheld in this case under Exemption 7(C)

can be divided into two general categories based on the privacy interests at stake.  At issue in the

first category, consisting of reports and notes of conversations and interviews with witnesses or

agency employees, is the witnesses', employees', and investigators' privacy interest in not

having their identities disclosed.  The second category, which includes accusations and

derogatory statements made about particular individuals, raises the same privacy concerns with

respect to the identities of the subjects of those accusations and statements.  In addition, the

accusations and derogatory statements themselves have been withheld in this second group.  As

the privacy interests and public interest with respect to each category may be different, the Court

will conduct separate balancing analyses for each.

i.      Disclosure of Identities

With respect to the documents OIG has withheld on the ground that release would

disclose the identities of targets, witnesses, or investigators who participated in the two

investigations underlying Plaintiffs' FOIA requests (H-08 pages 6, 11-13, 15-16, 18-19, 21, 24,

25, 28-47, 50-51, 54-57, 60, 62-63, 68-93, and 94-101; and AS pages 20-29, 31, 33, 36-48, 66,

74-76, 264, 276, 278-80, 324, and 427-635), the privacy interests of those individuals are

"substantial."  See Bast, 665 F.2d at 1254; SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205-

06 (D.C. Cir. 1991).  The D.C. Circuit has held "categorically that, unless access to the names

and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is

necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal

activity, such information is exempt from disclosure."  SafeCard Services, 926 F.2d at 1206.  In

SafeCard Services, the D.C. Circuit rejected the plaintiff's claim that "access to the names and

addresses of potential witnesses or litigants in SEC stock manipulation investigations would

provide SafeCard and the public with insight into the SEC's conduct with respect to SafeCard in

particular and short selling practices in general," noting that "the type of information sought is simply not very probative of an agency's behavior or performance." Id. at 1205-06.

This case presents a slightly more complex problem than is involved in cases where an individual's identity can be protected merely by redacting discrete pieces of personally identifiable information.  In the records at issue here, as explained in Section III(B)(1)(b), *supra*, the Court accepts OIG's attestation that certain documents must be withheld in their entirety in order to protect an individual's identity and thus privacy.  In the process, however, the Court recognizes that substantive information beyond names, titles, and phone numbers will likely also be withheld in the name of privacy.  This concern is not enough, however, to persuade the Court that these documents must be released.  This, again, is not a case in which the government has categorically withheld all documents compiled for law-enforcement purposes in their entirety. On the contrary, they have released many of the records that Plaintiffs sought in full and many more with limited redactions.  Thus even were the Court to find – which it does not – that Plaintiffs had presented compelling evidence that OIG engaged in illegal activity by improperly investigating their allegations of misconduct at FDA, they have not shown that disclosure of the documents at issue here – and, correspondingly, the identities of the particular individuals involved – would be necessary to confirm or refute such allegations.  The Court therefore finds that the privacy interests at stake outweigh the public interest in these records and that their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  OIG thus properly withholds these documents under Exemption 7(C).

The exception to this ruling relates to H-08 pages 54-57 and 62-63.  OIG describes these pages as "memoranda from OIG to FDA."  See Vaughn Index 1 at 5-6.  Unlike the majority of

the pages withheld here in their entirety under Exemption 7(C), the Court's *in camera* review reveals that, rather than recording witness interviews or conversations, these pages are memoranda from OIG seeking information from potential witnesses about a personnel matter involving one FDA employee, Sophie Paquerault, who signed a privacy waiver in connection with Plaintiffs' FOIA requests.  See Plfs. Mot. at 18 n.10.  While portions of H-08 pages 54-55 and 62-63 may properly be redacted under Exemption 7(C), including the recipient's name and other identifying information, other portions of these memoranda should be released, as the public interest in the facts and questions contained therein is substantial, and the privacy interests implicated by the questions and background material is insignificant.  For one of these memoranda (H-08 pages 56-57), OIG released the witness's response without withholding any portions of the document under Exemption 7(C).  See Section III(B)(3) (discussing AS 289-90 and AS 294-96).  The response includes all information in the memorandum.  H-08 pages 56-57 should thus be released in full, and H-08 pages 54-55 and 62-63 should be released in part.

ii. Accusations or Derogatory Statements

The second category of documents at issue are those in which OIG redacted accusations or derogatory statements about specific individuals (H-10 pages 6-10, 14-40, and 42-54; and AS-77-81, 82-87, 93-98, 106-114, 115, 197-98, 199, and 828-29).  Without exception, these documents were authored by Plaintiffs or, in one case, Sophie Paquerault, another employee who signed a privacy waiver in connection with Plaintiffs' FOIA requests.  See Plfs. Mot. at 18 n.10.  The Court infers from the circumstances involved and the unredacted portions of these documents that individuals mentioned are the subjects of OIG's investigation into Plaintiffs' allegations of managerial misconduct at FDA.

The Court finds first that these individuals' identities were properly withheld under Exemption 7(C) through OIG's redactions.  Targets of an investigation, like witnesses and

investigators, have a privacy interest in protecting their identities from public disclosure.  This is especially true where such individuals have been investigated and exonerated.  See McCutchen, 30 F.3d at 188.  After completing and closing investigations H-08 and H-10, OIG issued findings that no misconduct had occurred.  The stated public interest in the release of these documents is that they are probative of whether the investigations themselves were properly conducted.  The identities of the individual FDA officials that Plaintiffs have accused of wrongdoing need not be released in order to probe the propriety of the investigations themselves.  See Reporters Comm., 489 U.S. at 773 (citing Rose, 425 U.S. at 372, where deletions of names from disciplinary hearing summaries "were unquestionably appropriate because the names of the particular cadets were irrelevant to the inquiry into the way the Air Force Academy administered its Honor Code").  "[T]he identities of the subject[s] of the investigation[s] . . . is not nearly as significant" in terms of the public interest "as the actions (or lack thereof) taken by the defendant."  Cuban, 744 F. Supp. 2d at 89.

The D.C. Circuit's opinion in McCutchen, 30 F.3d 183, is instructive on this point.  That case involved a scientist's request for "a list of all investigations of scientific misconduct undertaken by the Department of Health and Human Services' Office of Scientific Integrity," including the names of both the complainants and the targets of the investigations.  The record in the case included "newspaper articles as evidence of 'growing concern' that OSI was mishandling scientific misconduct investigations," and "allegations in the scientific and political communities that OSI's handling of these cases ha[d] been inadequate."  Id. at 188.  The court permitted HHS to withhold the names of the targets of these investigations on the ground that a "mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by

Exemption 7(C)."  For this same reason, the Court finds that redaction of the identities of individuals mentioned in "accusations and derogatory statements" contained in the documents at issue may properly be withheld.

Plaintiffs rely heavily on the decision of another court in this District in <u>Cuban v. SEC</u>, 744 F. Supp. 2d 60, to support their case for disclosure.  This case, however, is clearly distinguishable from the facts before the <u>Cuban</u> court.  Most importantly, that case involved the government's decision to withhold entire documents under Exemption 7(C), rather than just the identities of particular individuals, without providing an explanation to the court for "why redacting the names and any other identifying characteristics of the persons involved in the OIG investigations will not adequately protect the privacy interests at stake." <u>Id.</u> at 89.  Even accepting "the defendant's representations that the identity of persons connected with the investigation should not be disclosed for the reasons the defendant offers," the court found "the defendant has not justified withholding the remainder of the information likely contained in the records." <u>Id.</u>  This is a crucial distinction for Plaintiffs in the present case, as the Court finds here that OIG may withhold only enough information as is necessary to protect the privacy and identities of the individuals mentioned.

The <u>substance</u> of the accusations and derogatory statements contained in the records at issue, however, is another matter.  To the extent the public has an interest in information that sheds light on whether or not OIG properly conducted the investigations at issue in this case, the <u>nature</u> of the accusations made against government officials may be probative of the propriety of the steps OIG took to investigate.  The Court thus finds that <u>if</u> the accusations and derogatory statements contained in the documents Plaintiffs seek can be redacted such that the identity of

the individuals against whom they are made will remain private, OIG may not withhold them under Exemption 7(C).

2.    *Exemption 7(E)*

OIG may withhold records or information under Exemption 7(E) if they were "compiled for law enforcement purposes," and if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) thus generally protects those law-enforcement techniques and procedures that are "not well-known to the public."  See Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337 F. Supp. 2d 146, 181 (D.D.C. 2004); see also Albuquerque Publishing Co. v. U.S. Dep't of Justice, 726 F. Supp. 851, 857 (Exemption 7(E) applies to "techniques and procedures generally unknown to the public").

OIG withholds portions of six additional pages under subsection (E) of Exemption 7.  All six pages come from File H-08: 1, 48, 49, 52, 53, and 135.  As explained above, the Court has already found that the records and information contained in Investigative File H-08 were compiled for law-enforcement purposes.  See Section III(B)(1)(a), *supra*.  The Court has reviewed *in camera* both unredacted copies of each of these pages as well as a declaration prepared by OIG's FOIA Officer, Robin Brooks, further explaining the non-public nature of the law-enforcement techniques withheld under this Exemption.  In light of the Court's review and Brooks's attestations, it is clear that the redacted portions of the documents at issue relate to investigative techniques and procedures that OIG uses to gather and analyze evidence that are not generally known to the public, and the disclosure of which could reasonably be expected to risk circumvention of the law.  To describe these techniques in greater detail here would risk

disclosing them – the very harm Exemption 7(E) seeks to prevent.  See Smith v. Bureau of

Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997) (recognizing "[i]n some

cases, it is not possible to describe secret law enforcement techniques, even in general terms,

without disclosing the very information to be withheld").  The Court, accordingly, finds that the

six documents at issue here were properly withheld under Exemption 7(E).

        3.     *Exemption 5*

      Finally, Plaintiffs object to a selection of HHS OIG's withholdings under FOIA

Exemption 5, pursuant to which an agency need not disclose "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 thus protects documents that

would be unavailable to an opposing party through discovery in civil litigation. See U.S. v.

Weber Aircraft Corp., 465 U.S. 792, 800 (1984); Martin v. Office of Special Counsel, 819 F.2d

1181, 1185 (D.C. Cir. 1987) (Exemption 5 "unequivocally" incorporates "all civil discovery

rules").  Documents that fall within the attorney-client privilege, the attorney work-product

privilege, and the deliberative-process privilege are thus exempt from disclosure.  See NLRB v.

Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1987); Coastal States Gas Corp. v. U.S. Dep't of

Energy, 617 F.2d 854, 862 (D.C. Cir. 1980).

      OIG justifies its invocation of Exemption 5 under the deliberative-process privilege.

Defs. Supp. Mot. at 9.  "One of the traditional evidentiary privileges available to the Government

in the civil discovery context is the common-sense, common-law deliberative process privilege."

Jordan v. DOJ, 591 F.2d 753, 772 (D.C. Cir. 1978), overruled in part on other grounds, Crooker

v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051 (D.C. Cir. 1981).  This

encompasses three main policy purposes, two of which are applicable to this dispute: (1) to

encourage open, frank discussions on matters of policy between subordinates and superiors; and

(2) to protect against public confusion that might result from disclosure of reasons and rationales

that were not in fact ultimately the grounds for an agency's action.  See Russell v. Dep't of Air

Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); see also Missouri ex rel. Shorr v. U.S. Army Corps

of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998) ("The purpose of the deliberative process privilege

is to allow agencies to freely explore alternative avenues of action and to engage in internal

debates without fear of public scrutiny.").

 Two requirements must be met to permit valid invocation of this privilege.  The

communication withheld must be predecisional – i.e., "antecedent to the adoption of an agency

policy," Jordan, 591 F.2d at 774, and it must be deliberative – i.e., "a direct part of the

deliberative process in that it makes recommendations or expresses opinions on legal or policy

matters."  Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975).  A record or document can

be predecisional in nature even when an agency subsequently makes a final decision on the issue

discussed in the record or document.  See Fed. Open Mkt. Comm. v. Merrill, 443 U.S. 340, 360

(1979).

 Exemption 5 may thus be invoked to withhold advisory opinions, recommendations, draft

documents, proposals, analyses, suggestions, discussions, and other subjective documents that

"compris[e] part of a process by which governmental decisions and policies are formulated."

Sears, Roebuck & Co., 421 U.S. at 150.  "The deliberative character of agency documents can

often be determined through 'the simple test that factual material must be disclosed but advice

and recommendations may be withheld.'"  Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1537

(D.C. Cir. 1993) (quoting Wolfe v. U.S. Dep't of Health and Human Services, 839 F.2d 768, 773

(D.C. Cir. 1988)).  "[B]ecause the privilege serves to protect the deliberative process itself, not

merely documents containing deliberative material," however, "purely factual material" may be withheld where it reflects an "exercise of discretion and judgment calls."  Mapother, 3 F.3d at 1539; Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011). Where a document contains "factual material . . . assembled through an exercise in judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action," the D.C. Circuit has found Exemption 5 to apply. Mapother, 3 F.3d at 1539; see also Ancient Coin Collectors Guild, 641 F.3d at 513.  This limited exception to the general principle that purely factual material may not be withheld under Exemption 5 may not be read so broadly, however, as to swallow the rule.  As the D.C. Circuit has observed, "Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the reports thinks material.  If this were not so, every factual report would be protected as part of the deliberative process."  Playboy Enterprises, Inc. v. U.S. Dep't of Justice, 677 F.2d 931, 935 (D.C. Cir. 1982).

Plaintiffs challenge OIG's decision to withhold under Exemption 5 the following records: H-08 page 9; H-10 pages 3-5, 6-10, 14-40, 42-54, 126-27, 447, 450-51, 498-503, 543-44, and 553-55; and AS pages 20-29, 31, 33, 36-48, 66, 74-76, 264, 276, 278-80, 289-96, 324, 378, 381-82, 390, 392-94, 427-635, 705, 770, 774-78, 784, and 806.  Many pages on this list fall into one category of documents – namely, handwritten notes taken during meetings – which may be addressed together.  The other pages are not as easily categorized, thus requiring the Court to separately evaluate the propriety of withholding a variety of reports, emails, memoranda, and draft documents.

a.   Notes

Many of the documents withheld in their entirety under Exemption 5, both from OIG's initial File H-10 disclosures and from the AS documents, are handwritten notes describing a meeting, phone call, or interview.  These include File H-10 pages 126-27, 498-503, and 543-44, and AS pages 20-29, 31, 33, 36-48, 66, 74-76, 264, 276, 278-80, 324, and 427-635.  OIG attests, and the Court is persuaded, that all are predecisional.  Brooks Decl., ¶¶ 80-85; Brooks Supp. Decl., ¶ 15.  Each of these documents was prepared during the investigations that Files H-08 and H-10 concern, and all predate the October/November 2010 conclusion of those investigations. Id.

OIG contends these handwritten notes are also deliberative because they "indicate the author's thoughts about what was note-worthy" about the meeting, call or interview.  See Brooks Decl., ¶¶ 80, 83-84; Brooks Supp. Decl., ¶ 15.  Here OIG's application of Exemption 5 is overbroad.  Exemption 5 provides no general exclusion for handwritten notes prepared by an agency employee, even though such notes inherently reveal what the notetaker thought was noteworthy about the subject of the notes.  See Playboy Enterprises, 677 F.2d at 935 ("Anyone making a report must of necessity select the facts to be mentioned in it; but a report does not become a part of the deliberative process merely because it contains only those facts which the person making the reports thinks material.").

Handwritten notes may be deliberative or part of the agency's deliberative process where they contain the author's opinions, analysis, or impressions of the event he or she describes.  To the extent such notes merely record or summarize factual content from the meetings, calls, or interviews, those purely factual portions must be disclosed "unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably

reveal the government's deliberations."  In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).

This is the conclusion reached by other courts in this District that have recently been confronted

with similar documents sought under FOIA.  See Williams & Connolly LLP v. SEC, 729 F.

Supp. 2d 202, 213 (D.D.C. 2010); Gold Anti-Trust Action Committee v. Board of Governors of

the Federal Reserve System, 762 F. Supp. 2d 123, 136-38 (D.D.C. 2011).

In Williams & Connolly, the court considered documents described as "notes of

conversations" and concluded: "To the extent that these documents contain merely factual

material such as statements made by Corigliano or Kearney, they do not fall within the

deliberative process privilege."  729 F. Supp. 2d at 213.  Similarly, in Gold Anti-Trust Action

Committee, the court reviewed in camera "a staff member's notes on [a] discussion by the Gold

and Foreign Exchange Committee of the Group of Ten."  762 F. Supp. 2d at 137.  Following

this review, Judge Ellen Huvelle concluded: "[I]t is apparent that these notes do not reflect 'the

writer's analytical views regarding the matters discussed . . . , but rather are a straightforward

factual recounting of a meeting . . . detailing what each of the participants said," and therefore

have "not properly been withheld under Exemption 5."  Id. (emphasis in original).  The Court

thus finds that OIG may not withhold these notes categorically under Exemption 5.

Only two of these pages (H-10 pages 126-27), however, were not also withheld in their

entirety under Exemption 7(C).  The Court has reviewed these two in camera and concludes that

their very brief contents are deliberative and were thus properly withheld.

b.   Other Pages

The Court will now address the other pages withheld under Exemption 5.  Page 9 from

File H-08 is a report of a conversation between FDA staff and OIG staff dated February 11,

2009.  See Brooks Decl., ¶ 68.  This document is predecisional because it predates and relates to

an investigation that concluded in October 2010.  Id.  The Court has reviewed the withheld

portion of this page *in camera*, and the results confirm OIG's attestation that the withheld portion

is deliberative "because OIG's advice was sought by FDA, regarding allegations that an FDA

employee made an unauthorized disclosure of confidential information," id., and it includes

discussion of potential possible actions to be taken in response.  The Court thus finds that OIG's

redaction of a portion of page 9 was proper under Exemption 5.

Another group of documents withheld in their entirety includes emails between FDA and

OIG (H-10 page 447), OIG and the Office of Public Health and Safety (pages 450-51), and OIG

and DOJ (pages 553-55) discussing evidence relating to a potential then-pending OIG

investigation.  These emails are no doubt predecisional, as they were prepared between August

2010 and October 2010 and thus predate the November 2010 conclusion of the investigation into

Plaintiffs' alleged breach of confidentiality.  See Brooks Decl., ¶¶ 81, 82, 85.  OIG attests that it

withheld pages 447 and 450-51 in their entirety to "preclude disclosure of the agency's

deliberative process."  Id., ¶¶ 81-82.  Having reviewed these documents *in camera*, the Court

finds that these emails do generally reveal the deliberative process the agency followed in

determining how to proceed with its investigation and are thus covered by Exemption 5.  Pages

553 and 555 contain similar deliberative material.  The sole exception is page 554, which also

contains purely factual information regarding the investigation into Plaintiffs' alleged disclosure

of confidential information.  OIG should therefore redact page 554 to protect information

regarding OIG's deliberations, as well as personally identifiable information that qualifies for

protection under Exemption 7(C), and then disclose the purely factual portions of the page.

OIG also properly withheld all or portions of additional internal FDA emails under

Exemption 5.  These pages include AS 378, 381-82, 390, 392-94, 705, 770, 784, and 806.

Because these 2008 and 2009 emails did not receive individualized discussion in Robin Brooks's Supplemental Declaration, the Court reviewed them *in camera*. This review confirmed that these records were both predecisional and deliberative, containing advice and recommendations regarding how to address either Plaintiffs' conduct and pending personnel matters within FDA, or allegations of retaliation against FDA, before final decisions were made as to how to proceed with respect to those matters.

Portions of pages AS 289-90 and AS 294-96, however, appear to be improperly withheld under Exemption 5 for the reason that the document is not predecisional. Described in <u>Vaughn</u> Index 3 merely as "[a]dvice and recommendations about Dr. Paquerault's work performance and whether to extend her appointment and names of other FDA employees," the redacted pages provided to Plaintiffs reveal the document to be a letter memorandum from Nicholas Petrick of OSEL/DIAM to an OIG Inspector dated August 12, 2009, with subject: "Response to 03-Aug-2009 Inquiry Letter." OIG released the majority of this document with limited redactions – in fact, pages AS 291-93 were released in full. <u>Vaughn</u> Index 3 indicates only that OIG determined the redacted statements qualify for Exemption 5 withholding because they "disclose internal FDA advice and recommendations about Dr. Paquerault's work performance and whether to extend her appointment before a final agency decision was made." The text of the document itself, however, indicates that it was prepared not as part of such a pending deliberative process, but to explain past agency decisions regarding Dr. Paquerault. The document is structured to respond to three particular issues. Issue #1 identifies a "decision that was made" and indicates that the author was "asked to provide a written statement and supporting documentation detailing the events that led up to this decision." AS 289. Issue #3 uses similar language. AS 295. Issue #2 required the author to provide "a written statement and supporting documentation" for

examples of behavior identified during Dr. Paquerault's 2008 year-end PMAP review, which had already taken place.  AS 291.  Given the document's stated purpose of explaining or justifying prior decisions, rather than making recommendations for future ones, and the fact that the Supplemental Declaration of Robin Brooks does not specifically mention these pages, the Court finds that OIG has failed to carry its burden of showing that the redacted portions of these pages are properly exempt under the deliberative-process privilege.

Finally, AS 774-78 disclose comments on a draft FDA document and are thus properly withheld under Exemption 5.  See Judicial Watch, 337 F. Supp. 2d at 174 ("Drafts and comments on drafts are squarely within the scope of Exemption 5.").

C.     Count 28

Unlike Counts 1, 6, 7, 12, 19, and 20, Count 28 relates not to the substance of OIG's withholdings, but rather to the procedure the agency used to process Plaintiffs' FOIA requests. Because the Court finds that Plaintiffs lack standing to bring this claim, the Court will grant summary judgment in Defendants' favor on Count 28.

Neither party disputes that OIG initially denied each of Plaintiffs' individual FOIA requests under Exemption 7(A).  See Brooks Decl., ¶¶ 11, 18, 24, 30, 36, 43 (denying Plaintiff Smith's request on September 27, 2010; Plaintiffs Wersto, Vishnuvajjala, Nicholas, and Czerska's requests on October 7, 2010; and Plainitff Hardy's request on November 8, 2010). Exemption 7(A) permits an agency to withhold "records or information compiled for law enforcement purposes" when production of such records "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In denying Plaintiffs' requests, OIG informed each of them of "an open and ongoing investigation concerning the subject of the request" and that the agency had determined that "prematurely releasing even

some of the information in the file could have disclosed the direction of the investigation and could have impeded or interfered with law enforcement proceedings."  See, e.g., Brooks Decl., ¶ 11.  After receiving these denials, Plaintiffs administratively appealed OIG's blanket application of Exemption 7(A) to their requests for documents contained in OIG Investigative Files H-08 and H-10.

While Plaintiffs' appeals were pending, Investigations H-08 and H-10 were closed.  In light of the fact that the investigations at issue were no longer ongoing, in November 2010, OIG withdrew its invocation of Exemption 7(A) and began processing Plaintiffs' requests under new numbers.  See Brooks Decl., ¶¶ 12, 19, 25, 31, 37, 44.  OIG released some documents to Plaintiff Czerka on November 3, 2010; to Plaintiffs Smith, Wersto, Vishnuvajjala, and Nicholas on November 5; and to Plaintiff Hardy on November 30, while withholding others in full or in part under Exemptions 5, 6, 7(C), and 7(E).  Id., ¶¶ 13, 20, 26, 32, 38, 45.  Plaintiffs plead in their Second Amended Complaint that after OIG began processing their requests with new numbers, HHS dismissed their pending appeals of OIG's initial refusal to release documents under Exemption 7(A) as moot.  See Sec. Am. Compl., ¶ 218.  They further contend that "this activity represents [Defendants'] ongoing policy or practice."  Id.

Plaintiffs allege in Count 28 that by beginning the process anew and dismissing Plaintiffs' administrative appeals as moot without adjudicating them, "HHS effectively ensured that the blanket withholdings could not be reversed administratively or undergo judicial review." Id., ¶ 219.  Plaintiffs thus allege that HHS maintains a "policy or practice that intentionally avoids appellate or judicial review of withholding decisions" in violation of FOIA and the APA. Id., ¶ 220.  They further allege that they "were materially harmed by this practice due to the

necessity that they bring the instant case to ensure appropriate review of OIG's blanket invocations."  Id., ¶ 224.

Defendants have now moved for summary judgment on Count 28 on the ground that "OIG acted reasonably when it processed Plaintiffs' requests following the closing of the OIG investigation[s]."  Def. Supp. Mot. at 19.  The Court need not reach that issue because it finds Plaintiffs have no standing to bring this count.  Article III of the Constitution limits the power of the federal judiciary to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2; see also Allen v. Wright, 468 U.S. 737, 750 (1984) (discussing the case-or-controversy requirement).  "This limitation is no mere formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" Dominguez v. UAL Corp., 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting Allen, 468 U.S. at 750).  Because "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), finding that a plaintiff has standing is a necessary "predicate to any exercise of [the Court's] jurisdiction."  Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)).

"Every plaintiff in federal court," accordingly, "bears the burden of establishing the three elements that make up the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability."  Dominguez, 666 F.3d at 1362 (quoting Lujan, 504 U.S. at 560-61).  Although Defendants do not explicitly challenge Plaintiffs' standing with respect to Count 28, "[b]ecause standing is a jurisdictional doctrine," the Court is "obliged to consider the issue sua sponte."  Catholic Social Services v. Shalala, 12 F.3d 1123, 1125 n.2 (D.C. Cir. 1994). Plaintiffs "bear[] the burden of providing, by affidavit or other evidence, specific facts sufficient to demonstrate standing; once provided, however, those facts will be taken as true by this Court."

Town of Barnstable v. F.A.A., 659 F.3d 28, 31 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

It is on the first of the three standing criteria that Plaintiffs' standing falters. To establish that they have suffered an "injury in fact," Plaintiffs must point to "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotations omitted). Count 28 is premised on an alleged injury to Plaintiffs' procedural rights – namely, that by re-processing Plaintiffs' FOIA requests under new numbers and dismissing their administrative appeals without adjudicating them, OIG denied Plaintiffs the process they were due. See Plfs. Opp. at 26-27.

To demonstrate standing to assert a claim based on the alleged violation of a procedural right, Plaintiffs "must show not only that the defendant[s'] acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff[s'] own interest[s]." Bentsen, 94 F.3d at 665. Thus "to have standing to challenge an alleged procedural violation, a party must demonstrate that it has suffered an injury caused by the substantive action taken by the agency." WebCel Communications, Inc. v. FCC, 1999 WL 325450, at *1 (D.C. Cir. Apr. 28, 1999).

Here the undisputed facts of the case disprove the substantive injury Plaintiffs allege they suffered as a result of Defendants' dismissal of their administrative appeals. The only substantive injury Plaintiffs allege in their Second Amended Complaint is that they "were materially harmed by this practice due to the necessity that they bring the instant case to ensure appropriate review of OIG's blanket invocations." Sec. Am. Compl., ¶ 224. Although the count cites both FOIA and the Privacy Act, Plaintiffs' brief on the issue makes manifest this claim

relates only to Defendants' invocation of FOIA Exemption 7(A).  See Plfs. Opp. at 26-27.

Plaintiffs do not dispute, however, and Defendants attest, that OIG had withdrawn its reliance on

Exemption 7(A), processed their FOIA requests, and asserted other exemptions for any

remaining withholdings by November 5 (in the case of Plaintiffs Smith, Wersto, Vishnuvajjala,

Nicholas, and Czerska) and by November 30, 2010 (in the case of Plaintiff Hardy).  Plaintiffs did

not file this suit until December 15, 2010, more than two weeks after OIG had disclaimed any

reliance on Exemption 7(A) to continue to withhold documents.  As a result, Plaintiffs did not

need to bring this suit to challenge Defendants' reliance on 7(A); such reliance – and, ergo, such

injury – had ceased by the time of filing.

To the extent Plaintiff National Whistleblower Center alleges that, "[a]s a frequent FOIA

requester, [it] stands to continue to be harmed by this ongoing practice in the future," Sec. Am.

Compl., ¶ 224, this allegation of future unspecified harm is too vague.  Is the harm, for instance,

a future invocation of Exemption 7(A) or, more broadly, generally improper reliance on

exemptions?  More particularity is required before such an allegation could continue.

Because Plaintiffs have failed to plead and demonstrate that they have suffered a

material, concrete harm as a result of any procedural violation Defendants may have committed

in processing their FOIA requests, the Court will grant summary judgment in favor of

Defendants on Count 28.

## IV.    Conclusion

For the reasons articulated above, an Order accompanying this Memorandum Opinion

will grant in part and deny in part the parties' Cross-Motions for Summary Judgment, dismiss

Counts 27 and 28 of Plaintiffs' Second Amended Complaint, and instruct Defendant HHS OIG

to release additional information to Plaintiffs consistent with this Memorandum Opinion.

                                        /s/ James E. Boasberg
                                        JAMES E. BOASBERG
                                        United States District Judge

Date:  March 28, 2012